# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GAREY E. LINDSAY, Regional Director of the Ninth Region of the National Labor Relations Board, | : : : : | Case No. 3:16-mc-00007 |
| | | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| Applicant, | : | |
| | : | |
| vs. | : | |
| | : | |
| FUYAO GLASS AMERICA INC., | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS[1]

"The NLRB is authorized to subpoena documents of any party 'being investigated or proceeded against that relates to any matter under investigation or in question.'" *N.L.R.B. v. Detroit Newspapers*, 185 F.3d 602, 605 (6th Cir. 1999) (quoting, in part, Labor–Management Relations Act, § 11(1), 29 U.S.C. § 161(1)) (other citation omitted; *N.L.R.B. v. ITT Telecomms.,* 415 F.2d 768, 769 (6th Cir. 1969). "If a party refuses to comply with a subpoena, the 'district court ... shall have jurisdiction to issue to such person an order requiring such person to appear before the Board ... to produce evidence if so ordered.'" *Id*. (quoting, in part, § 11(2), 29 U.S.C. § 161(2)).  This is the foundation of the present matter. Its architecture arises from the parties' dispute over the National Labor Relation Board's subpoena for certain documents from Respondent Fuyao Glass America Inc.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The National Labor Relations Board issued an administrative subpoena duces tecum to Respondent during the Board's investigation of alleged unfair labor practices. The investigation is connected to a charge of unfair labor practices presently pending before the Board (Region 9). The charge alleges that Respondent terminated Adam Moffitt's employment because he openly engaged in Union activity. If shown, this would constitute a violation of Section 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3).

The specifics of the NLRB's interest in Respondent begins with its employment of Adam Moffitt in its ARG (Aftermarket Replacement Glass) Department. Respondent terminated his employment on or about May 2, 2016. The reason for Moffitt's termination, according to Respondent, was that he had exceeded ten attendance occurrences under its attendance policy. (Doc. #4, *PageID* # 43). The Board is curious about whether this was Respondent's actual reason. As a result, the Board issued its presently at-issue subpoena duces tecum, requesting two sets of documents.

Respondent does not challenge the Board's first request but does challenge the second. The challenged request asks Respondent to produce documents containing, or consisting of, the following:

> 2. Names, contact information, attendance records, and all discipline and discharge records for attendance violations, for all employees working in the ARG Department since September 1, 2015.

(Doc. #1, *PageID* #9). Respondent contends that this request is overly broad, unduly burdensome, seeks information that is not relevant, and amounts to a fishing expedition and an abuse of process.

The decision to enforce an NLRB subpoena is within the discretion of the district court. *Detroit Newspapers*, 185 F.3d at 605. Congress has given the Board expansive authority to subpoena documents from "any person[2] being investigated or proceeded against that relates to any matter under investigation or in question." 29 U.S.C. § 161(1) (footnote added). This authority, however, is not unlimited. This "court may not enforce an administrative subpoena unless the request seeks relevant material and is not unduly burdensome." *EEOC v. Ford Motor Credit Co.,* 26 F.3d 44, 47 (6th Cir.1994) (citing *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 191 (1990)); *see Detroit Newspapers,* 185 F.3d at 605 (the subpoena must seek "relevant material"). This "court's task is to weigh the likely relevance of the requested material to the investigation against the burden ... of producing the material." *Detroit Newspapers*, 185 F.3d at 605 (citing *Ford Motor Credit Co.*, 26 F.3d at 47).

In the present case, the Board's second request seeks to explore, and will likely uncover, documents with information relevant to determining whether or not Respondent terminated Millet's employment because he openly supported Union activities. Borrowing from employment-discrimination cases, *see, e.g, Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007), the Board's theory essentially proposes that there is one large set containing Millett and employees comparable or similarly situated to him who violated the ten-point attendance policy. The Board seeks to learn whether Respondent essentially created two

---

[2] "The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in cases under title 11 of the United States Code, or receivers." 29 U.S.C. § 152(1).

subsets of these ten-point violators: one subset containing Millett, a Union supporter who was terminated; the other containing one or more individuals who did not support the Union and were not terminated. If documents contain information showing the latter, then a reasonable inference may arise that Respondent's true reason for terminating Millet was his open support of Union activities, not his violation of the ten-point attendance policy. The absence of such documents would tend to show the opposite. Because of this, the Board's second document request seeks likely relevant information.

Yet, this does not fully resolve the parties' dispute. During a hearing before this Court, Respondent presented testimony from its Vice President of Human Resources, Eric James Vanetti. He testified that answering the Board's second request would require Respondent to produce records for over 800 employees. He explained that to locate such responsive documents, three sources would need to be examined: (1) the Human Resources' system to determine, for example, if an employee was employed in ARG department during the pertinent time period; (2) the employee's personnel files, which are kept alphabetically in paper form; and (3) supervisors' information about the employee's attendance. It would take 30 minutes (and probably more) to examine a single employee's personnel file and the examination would likely lead to further investigative work and require judgment calls, like how many points a particular employee should have been given for an attendance issue. Given all this work, the time it would take, along with the number of employees involved, Respondent would need to hire external labor to comply with the Board's second request for documents.

Weighing the likely relevance of the documents and information the Board seeks "against the burden ... of producing the material," *Detroit Newspapers*, 185 F.3d at 605, reveals a need to narrow the Board's request, at least at the present time.  Vinetti testified in a knowledgeable and convincing manner about Respondent's fast-growing business and the resulting strain it placed on Respondent's minimally staffed Human Resources Department before Vinetti arrived.  Respondent's fast growth also created a corresponding need to hire many new employees, including Human Resources employees, and caused inefficient or disorganized record-keeping.   More significantly, Vinetti testified credibly about the hundreds of work hours that would be needed to fully comply with Board's second request for documents—including the need to search three sources for such documents—and the resulting need for Respondent to hire outside labor to search for responsive documents, if the Board's subpoena is enforced.   Vinetti's testimony establishes that the Board's request will place an undue burden upon Respondent.  However, the Board's request can be narrowed so it does not impose an undue burden.  The narrowing point is to documents of employees working under Millett's former supervisor in the ARG Department, Mr. D. Osgood, during the time period identified in the Board's second request.  This will likely identify employees similarly situated to Millett.  Although this will still place some burden on Respondent, this narrows the Board's second document request such that it will not place an undue burden on Respondent when weighed against the likely relevance of the information sought.

Respondent argues that neither the Board nor the Union has provided it with the name of even a single employee who violated the ten-point attendance policy, like Millett,

5

but was not terminated.  But this reverses things.  Given the Board's broad authority to subpoena relevant documents, it does not need to limit its document request to a single employee with Millett's same attendance violation.  *See N.L.R.B. v. Greif Bros., Inc*., 2011 WL 2637078, at *1 (S.D. Ohio 2011) (King, MJ) (Board has broad subpoena authority), Report & Recommendation adopted by *N.L.R.B. v. Greif Bros., Inc*.,  2011 WL 2636960 (S.D. Ohio July 6, 2011) (Marbley, DJ), While the Board could possibly learn the names of some employees by, say, urging the Union to search for them, the Board has no reasonably reliable and comprehensive method to learn about such employees, except through a search of Respondent's records.

 Respondent also contends that the Board is on a fishing expedition and is abusing its power due to its overly broad second request for documents.  These contentions lack merit in light of the Board's expansive subpoena authority in this area.  S*ee id*.; *see also* 29 U.S.C. § 161(1).  Additionally, the Board's search for employees similarly situated to Millett is focused; it is not an unfocused attempt to fish for any and all possible violations of the National Labor Relations Act.  It suffices, therefore, to narrow the Board's request without the need to fault the Board for fishing or abusing its authority.

 Accordingly, the Board's Application is well taken, in part, but its second request for documents should be narrowed to documents concerning employees in the ARG Department working under Plaintiff's former supervisor, Mr. D. Osgood, since September 1, 2015.

**IT IS THEREFORE RECOMMENDED THAT**:

The Board's Application For Order Requiring Obedience To Subpoena Duces Tecum be GRANTED, in part, and narrowed as described herein.


April 6, 2017                                             *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).