IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GAREY A. LINDSAY, Regional
Director of the Ninth Region of the
National Labor Relations Board,
For and On Behalf of the NAT'L
LABOR RELATIONS BD.,

    Applicant,

v.

FUYAO GLASS AM., INC., *et al.*,

    Respondent.

:
:
:
:

Case No. 3:16-mc-7

JUDGE WALTER H. RICE

MAGISTRATE JUDGE
SHARON L. OVINGTON

---

DECISION AND ENTRY ADOPTING REPORT AND
RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE
(DOC. #6), AND OVERRULING OBJECTIONS OF APPLICANT GAREY
E. LINDSAY, REGIONAL DIRECTOR OF THE NINTH REGION OF THE
NATIONAL LABOR RELATIONS BOARD, TO SAID JUDICIAL FILING
(DOC. #9); THE BOARD'S APPLICATION FOR ORDER REQUIRING
OBEDIENCE TO SUBPOENA *DUCES TECUM* (DOC. #1) IS
SUSTAINED, BUT NARROWED PURSUANT TO THE PARAMETERS
SET FORTH BELOW; RESPONDENT FUYAO GLASS AMERICA, INC.,
SHALL PRODUCE RESPONSIVE DOCUMENTS TO THE BOARD
WITHIN TWENTY-ONE DAYS OF THIS ENTRY; TERMINATION ENTRY

---

On or about May 2, 2016, Adam Moffitt ("Moffitt") was terminated by Respondent Fuyao Glass America, Inc. ("Respondent" or "Fuyao"), purportedly for violating Fuyao's ten-point attendance policy. Doc. #6, PAGEID #306. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") filed an unfair labor charge with Applicant Garey A. Lindsay, Regional Director of the Ninth Region of the National Labor Relations Board ("Applicant," "Board" or "NLRB"). In the charge, the UAW contended that Moffitt was terminated in retaliation for his participation

in efforts to unionize Fuyao's Moraine, Ohio, plant, in violation of the National Labor Relations Act of 1935 ("NLRA"). Doc. #9, PAGEID #357-58 (citing 29 U.S.C. § 158(a)(1, 3)). The NLRB began investigating whether "other, similarly situated employees working in Moffitt's department, Aftermarket Replacement Glass ('ARG'), may have received more lax treatment with respect to Respondent's attendance policy." *Id.*, PAGEID #358. To that end, the NLRB issued a subpoena *duces tecum* to Fuyao, asking that Fuyao produce the "[n]ames, contact information, attendance records, and all discipline and discharge records for attendance violations, for all employees working in the ARG Department since September 1, 2015." Doc. #1-2, PAGEID #9.

Fuyao refused to comply with the request, claiming that it was overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence. Doc. #6, PAGEID #306.[1] After informal attempts at resolution were unsuccessful, the NLRB filed an Application for Order Requiring Obedience to Subpoena *Duces Tecum* ("Application") on November 29, 2016. Doc. #1. On February 3, 2017, Magistrate Judge Sharon L. Ovington conducted a hearing on the Application, hearing oral argument from the NLRB and Fuyao and testimony from Fuyao's Vice President of Human Resources ("HR"), Eric Vanetti ("Vanetti"). Doc. #7. The Magistrate Judge took the Application under advisement, *id.*, PAGEID #353, and on April 6, 2017, issued a Report and Recommendations. Doc. #6. The Magistrate Judge recommended sustaining the Application, but narrowing it "to documents concerning employees in the ARG Department <u>working under Plaintiff's former supervisor, [Dondi]</u>

---

[1] Fuyao also claimed that the subpoena was "a fishing expedition and an abuse of process." Doc. #6, PAGEID #306. However, as discussed below, the scope of the documents sought in the subpoena, and the NLRB's conduct in attempting to enforce compliance, fall well short of a fishing expedition or abuse of process.

Osgood, since September 1, 2015." *Id.*, PAGEID #310 (emphasis added). The NLRB filed Objections to the Report and Recommendations, Doc. #9; Fuyao filed a response to the NLRB Objections, but raised no objections itself. Doc. #10.

Based upon the reasoning and citations set forth in the Report and Recommendations, as well as upon a thorough *de novo* review of the Application, the parties' filings, the hearing transcript and the applicable law, this Court ADOPTS the Report and Recommendations in their entirety, OVERRULES the NLRB's Objections thereto and SUSTAINS the NLRB's Application, subject to the narrowed scope set forth in the Report and Recommendations, Doc. #6, PAGEID #310, and *infra*.

I.  **LEGAL STANDARDS**

   A.  **Report and Recommendations**

Unlike civil cases, where decisions by a Magistrate Judge on discovery matters and appeals therefrom, are governed by Rule 72(a), this Court must conduct a *de novo* review of a Magistrate Judge's decision on ordering compliance with a subpoena issued by a federal administrative agency. *N.L.R.B. v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992); 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). The Court's review, however, is limited to any part of the recommended "disposition that has been properly objected to. The [Court] may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the [M]agistrate [J]udge with instructions." Fed. R. Civ. P. 72(b)(3) (emphasis added).

B.  **Administrative Subpoena**

The NLRB has the authority to issue a subpoena compelling the production of "any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question." 29 U.S.C. § 161(1). A District Court may enforce the subpoena, *id.*, § 161(2), but, as with civil cases governed by Federal Rules of Civil Procedure 26, 37, and 45, the Court may not order compliance unless the subpoena seeks relevant material and is not unduly burdensome. *N.L.R.B. v. Detroit Newspapers*, 185 F.3d 602, 605 (6th Cir. 1999); *E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994).

II.  **ANALYSIS**

A.  **Relevance**

The Magistrate Judge inferred that the NLRB, in requesting the information contained in the subpoena, had formulated the following theory in its investigation: Fuyao created two subsets of employees who had received ten attendance points:

> [O]ne subset containing [Moffitt], a Union supporter who was terminated; the other containing one or more individuals who did not support the Union and were not terminated. If documents contain information showing the latter, then a reasonable inference may arise that Respondent's true reason for terminating [Moffitt] was his open support of Union activities, not his violation of the ten-point attendance policy. The absence of such documents would tend to show the opposite.

Doc. #6, PAGEID #307-08. "Because of this," the Magistrate Judge concluded, "the Board's . . . document request seeks likely relevant information." *Id.*, PAGEID #308. Neither the NLRB nor Fuyao objects to the Magistrate Judge's conclusion, and the Court agrees that the NLRB's document request, as written, is reasonably likely to lead

4

to the production of information relevant to its theory of retaliation against Moffitt. Thus, the NLRB satisfied the relevance prong for enforcement of the subpoena.

### B. Overbreadth and Undue Burden

Vanetti testified that Fuyao's rapid growth rendered impossible the centralization of personnel matters within the HR office until he was hired on or about June 27, 2016—almost eight weeks after Moffitt's date of termination. Doc. #7, PAGEID #327, 331. Prior to Vanetti being hired, decisions as to whether an employee had violated the attendance policy, and whether to issue progressive discipline up to and including recommending termination, rested with individual supervisors, including but not limited to Moffitt's supervisor, Dondi Osgood ("Osgood"). *Id.*, PAGEID #333-35. Osgood's decisions to assess attendance violations and recommend termination were not made at the direction of a person or persons within HR; nor were they made in conjunction or consultation with other managers.[2] *Id.*, PAGEID #334-35. The NLRB offered no testimony or other evidence rebutting Vanetti's description of Fuyao's attendance and discipline decision-making procedures during the relevant time period.

Osgood's autonomy in making these decisions is an important point, as the NLRB and Fuyao agree that comparators in the NLRA context must be similarly situated "in all respects," as they would be if Moffitt's claim arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Doc. #9, PAGEID #359-60 (citing *Ford Motor Credit*, 26 F.3d at 47); Doc. #10, PAGEID #371-72 (citing *Ford Motor Credit*, 26 F.3d at 45, 47). As Fuyao notes, it is well-settled within the Sixth Circuit that, to be

---

[2] While there could be evidence of collaboration between Osgood and other supervisors, or between Osgood and Fuyao management, any such evidence is beyond the scope of the document request.

5

similarly situated, individuals "<u>must have dealt with the same supervisor</u>, have been subject to the same standards[,] and have engaged in the same conduct[.]" Doc. #10, PAGEID #372 (emphasis added) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Thus, in this case the only people similarly situated, *i.e.*, subject to the same supervisor or the same decision-maker on attendance policies and discipline, were those individuals supervised by Osgood during the relevant time period, and not the approximately 800 employees within the ARG department. This narrow range of similarly situated employees leads the Court to conclude that the NLRB's subpoena, as written, is overbroad.

Moreover, as Vanetti testified, more than 800 employees worked in the ARG department during the relevant time period, and their discipline and attendance records, were originally maintained by Fuyao in hard copy only. Doc. #4-1, PAGEID #50; Doc. #7, PAGEID #318, 332. Vanetti further testified that approximately 500 of those employees are still employed by Fuyao, and now have electronic personnel records; thus, obtaining the information sought for those employees would not be difficult. Doc. #7, PAGEID #345. However, an individual would be required to go through the paper files of former employees to determine which of those former employees worked in the ARG department. *Id.*, PAGEID #335. As only a fraction of those employees would have been supervised by Osgood, and thus, are similarly situated comparators, it would be unduly burdensome to require Fuyao to identify and produce all of these records.[3]

---

[3] The NLRB objects to the Magistrate Judge's conclusion that identification of the personnel files would "lead to further investigative work and require judgment calls, like how many points a particular employee should have been given for an attendance issue." Doc. #9, PAGEID #362 (quoting Doc. #6, PAGEID #308). The NLRB is correct that such investigation and judgment calls are "not questions that need to be answered to respond to the subpoena, but instead relate to Respondent's potential liability defense." *Id*. However, that distinction does not change the fact that the vast majority of the records sought are

6

Finally, the NLRB argues that Fuyao's "failure to keep organized regular and ordinary personnel records during a relatively short time span should not operate as shield from the [NLRB's] broad subpoena power." Doc. #9, PAGEID #363; *see also* Doc. #7, PAGEID #331 (Vanetti testifying that "[w]hen I came on board, I had inherited a mess[.]"). The Court agrees, and adopts the Magistrate Judge's conclusion that requiring Fuyao to produce responsive documents for employees supervised by Osgood since September 1, 2015, is not unduly burdensome.[4] Doc. #6, PAGEID #310.

## III. CONCLUSION

For the foregoing reasons, the Court ADOPTS the Report and Recommendations of the Magistrate Judge in full, Doc. #6, and OVERRULES the Objections of the NLRB thereto. Doc. #9. The NLRB's Application, Doc. #1, is SUSTAINED, as follows: Fuyao must produce to the NLRB, within twenty-one days of this Entry, the names, contact information, attendance records, and all discipline and discharge records for attendance violations, for all employees who worked in the ARG Department under the supervision of Dondi Osgood since September 1, 2015.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

immaterial to the NLRB's investigation, as they are for employees who would not be valid comparators to Moffitt.

[4] In its response to the NLRB's Objections, Fuyao offered to provide such documents. Doc. #10, PAGEID #376.

7

Date: March 5, 2018

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE